**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KYLE SMITH,** | : |
| *Plaintiff,* | : |
| v. | : |
| **PROMARK PRODUCTS WEST, INC.** | : CIVIL ACTION |
| and | : NO. 02-CV-2718 (RLB) |
| **ARIENS COMPANY,** | : |
| *Defendant.* | : |

**DEFENDANTS', PROMARK PRODUCTS WEST, INC. AND ARIENS COMPANY, MOTION *IN LIMINE* TO PRECLUDE COUNTERVAILING OPINION, TESTIMONY OR EVIDENCE AS TO PROPER MAINTENANCE AND AN ADVERSE INFERENCE JURY INSTRUCTION FOR PLAINTIFF'S SPOLIATION OF EVIDENCE**

Defendants, Promark Products West, Inc. and Ariens Company, hereby move for the entry of an order precluding countervailing opinion, testimony or evidence of proper maintenance or the condition of the subject equipment, and awarding an adverse inference jury instruction, for plaintiff's spoliation of evidence, for the reasons set forth and on the basis of the authorities cited in the accompanying memorandum of law.

LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO

BY: _____ (GC1270)
Gerard Cedrone, Esquire
Leland I. Kellner, Esquire
Howard W. Donahue, Jr., Esquire
Attorneys for Defendant, Promark Products West, Inc.
and Ariens Company
Suite 500
190 North Independence Mall West
6th & Race Streets
Philadelphia, PA  19106
(215) 627-0303

DATED:  October 22, 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KYLE SMITH,** | : |
| *Plaintiff,* | : |
| v. | : |
| **PROMARK PRODUCTS WEST, INC.** | : CIVIL ACTION |
| and | : NO. 02-CV-2718 (RLB) |
| **ARIENS COMPANY,** | : |
| *Defendant.* | : |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS', PROMARK PRODUCTS WEST, INC. AND ARIENS COMPANY, MOTION *IN LIMINE* TO PRECLUDE COUNTERVAILING OPINION, TESTIMONY OR EVIDENCE AS TO PROPER MAINTENANCE AND AN ADVERSE INFERENCE JURY INSTRUCTION FOR <u>PLAINTIFF'S SPOLIATION OF EVIDENCE</u>**

**I.     Introduction**

Plaintiff has brought a product liability action against defendants, Promark Products West, Inc. and Ariens Company, requiring proof that the subject Promark 16-SP Stump and Root Grinder (hereinafter "16-SP") was defective and unreasonably dangerous. Plaintiff has brought this claim missing one critical piece of evidence – the machine itself. The 16-SP has been spoliated. The spoliation occurred after plaintiff's investigator photographed the machine and long before the defendants were even notified of this lawsuit, let alone given the opportunity to inspect the machine.

1

**Facts**

The machine involved is alleged to have been a model 16-SP stump grinder manufactured by the now defunct Promark Products West, Inc. in 1985. At the time of the incident, it was owned by Joe Huber (now deceased), presumably for use in his business. Karl Kirchhofer had borrowed it for a side job involving the removal of stumps from a residential property on September 8, 2001. Plaintiff Kyle Smith was there to assist Kirchhofer with post-grinding clean-up duties. Huber also employed Smith for seasonal work.

According to Kirchhofer, he was operating the 16-SP when it "started to jump around on [him] a little bit." *See* Deposition of Karl Kirchhofer, taken on June 15, 2004, at page 39, lines 22-23, a true and correct copy of which is attached hereto as Exhibit "A." Believing the work would proceed more quickly with help holding the machine, Kirchhofer called for Smith to assist him. *Id*. at pages 42-43.

According to plaintiff, he came over to the 16-SP and, standing to the left of Kirchhofer, grabbed hold of one of the sidebars connecting the operator handlebars to the machine. *See* Deposition of Kyle P. Smith, taken on June 4, 2004 at page 78, a true and correct copy of which is attached hereto as Exhibit "B," and *see* Exhibit "A" at page 43. In some manner Smith cannot explain, his right leg came in contact with the cutting wheel. *See* Exhibit "B" at page 64, and Exhibit "A" at 44.

On or around February 7, 2002, plaintiff and his counsel had an investigator, Charles Sulzbach, inspect the 16-SP and photograph it at Mr. Huber's business. *See* Plaintiff's Answers to Defendants' Interrogatories – Set II at ¶ 5, a true and correct copy of which is attached hereto as Exhibit "C." Over a year later, plaintiff filed his Amended Complaint, which was served on

2

Ariens Company on or around February 23, 2003. *See* Summons and Amended Complaint, a true and correct copy of which is attached hereto as Exhibit "D."

During the year and five months that lapsed from plaintiff's injury to the date that defendants were first served with this lawsuit, Mr. Huber passed away, his business dissolved, and his equipment, including the 16-SP, was sold. *See* Exhibit "B" at page 21, line 15 – page 22, line 10. Plaintiff indicated that he did not know where the machine was and that the last time he saw the machine was right after the incident. *Id.* at page 43, lines 5-9. Plaintiff was unable to provide the current location of the 16-SP. *See* Plaintiff's Answers to Defendants' Interrogatories – Set I at ¶ 10, a true and correct copy of which is attached hereto as Exhibit "E." In an effort to locate the product, the defendants went to the company that had been identified as having purchased Mr. Huber's equipment to investigate whether it had the 16-SP. The only equipment remaining was a trailer-mounted stump grinder, not the 16-SP. It had been spoliated.

### III.   Argument

#### A.   Plaintiff Breached His Duty to Preserve Evidence When He Spoliated The 16-SP.

It is a fundamental axiom that a party has a duty to preserve evidence for defense inspection. *See Bowman v. American Med. Sys., Inc.*, 1998 U.S. Dist. LEXIS 16082, *9-10 (E.D. Pa. 1998), citing *Roselli v. General Elec. Corp.*, 599 A.2d 685 (Pa. Super. 1991). The duty is neither a duty to preserve evidence only helpful to that party, nor is it limited to the product alleged to be defective. The duty is to preserve all the evidence, and plaintiff has breached it.

There is no question that plaintiff was in a position to preserve this evidence. Over a year lapsed between the date plaintiff's representative inspected the 16-SP and the date that the defendants were placed on notice of this claim. Plaintiff took no action to preserve the product

during this time, despite possessing all the information he needed to bring this lawsuit. Plaintiff should not be permitted to benefit from his misconduct.

The fact that the investigator took photographs of the 16-SP is not a reason to diminish or excuse the misconduct of plaintiff. In photographs, the images are influenced by the lighting conditions, the angles at which they were taken, the equipment used and development procedures. This can result in shadowing or distortion of the photographs and, thus, the distortion of important evidence. For instance, it is difficult to tell from plaintiff's investigator's photographs what condition the teeth of the cutting wheel were in, how sharp they were and how they were aligned. The maintenance of the 16-SP ultimately relates to how the machine performs when grinding. How the machine was working at the time of the incident relates to causation. These are important issues that defendants are forced to address by looking at laser copies of photographs rather than by looking at the machine. The inequity is clear.

The consultants for defendants were deprived of the same opportunity as plaintiff, forcing defendants to rely upon the inadequate work product of their adversary's representative. Having established plaintiff's breach, the issue now is what sanction would help to rectify plaintiff's misconduct.

   **B.** **The Preclusion of Any Countervailing Opinion, Testimony or Evidence to Defendants' Position on The Lack of Maintenance and an Adverse Inference Jury Instructions are Appropriate Sanctions for Plaintiff's Spoliation.**

The appropriate sanction for spoliation of evidence is determined by reference to three factors: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) the availability of a lesser sanction what will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schimd v. Milwaukee Tool Corp.*, 13 F.3d 76, 79 (3rd Cir. 1994). There is a gamut of sanctions for spoliation, from the

4

dismissal of the plaintiff's case entirely to the preclusion of countervailing evidence to the imposition of a spoliation inference instruction. *See Bowman*, at *9 and *Medina v. Rose Art Indus., Inc.*, 2003 U.S. Dist. LEXIS 3203, *5 (E.D. Pa. 2003)

With respect to the first factor, an assessment of a party's fault includes the actions of that party's counsel. Courts have been very critical of third-party and attorney conduct with respect to spoliation and have consistently found that the actions of third-parties and attorneys do not relieve the plaintiff of their responsibility to preserve evidence. *See Bowman, supra,* and *Austin v. Nissan Motor Corp., U.S.A.*, 1996 U.S. Dist. LEXIS 3102, *6 (E.D. Pa. 1996). In *Bowman*, the plaintiff's prosthesis was discarded by his doctor after plaintiff's counsel instructed the doctor to preserve the evidence. *Bowman*, at *10. Plaintiff's doctor died after spoliating the prosthesis. *Id*. In dismissing plaintiff's claims, the court found that it was impossible to determine why the prosthesis was removed and destroyed since the doctor was dead. *Id*. The court found that "[e]ven though no evidence suggests that the plaintiff acted in bad faith, the evidence was actually discarded by his doctor, and not by Bowman himself, this in no way relives his responsibility." *Id*. at *10-11 (internal quotations omitted).

The plaintiffs' vehicle in *Austin* was repaired following an accident and the plaintiffs' retention of counsel. *Austin*, *3. The plaintiffs also had an accident reconstructionist inspect the vehicle and plaintiffs' counsel retained a forensic engineer to inspect the driver's seat before the repairs were performed. *Id*. The court found:

> In light of the fact that plaintiffs retained counsel before the repairs were begun and that they were fully aware that any potential lawsuit against Nissan would revolve around alleged defects in the driver's seat, the Austins were responsible for any arrangements, or lack thereof, to preserve the seat once the vehicle was repaired. The fact that the seat was actually discarded by the garage, and not by the Austins themselves, in no way relieves their responsibility.

5

*Id*. at *6.

Plaintiff and his attorney bear similar responsibility in this case. Just months after the incident in February of 2002, plaintiff's counsel was aware of the location and the owner of the 16-SP and retained an investigator to photograph it. *See* Exhibit "C" and Exhibit "E". Smith and his attorney were fully aware of the potential lawsuit and knew that it would revolve around the 16-SP. Despite having this information, plaintiff and his counsel took no any steps to preserve the 16-SP. Instead, they inspected the machine and walked away. Then, over a year after the inspection, they serve defendants with this lawsuit. By that time, the product was gone.

The fact that the 16-SP was sold after Mr. Huber's death should not relieve plaintiff of his responsibility. With the knowledge of his claim and the whereabouts of the machine, plaintiff had a variety of options to attempt preservation, or could have simply notified Ariens Company of the claims and the location of the machine. Rather than take an active role to preserve the 16-SP, plaintiff and his attorney silently stood by while the product disappeared.

The second factor involves the prejudice sustained by defendants from plaintiff's spoliation of evidence. In the subject case, causation will be a contested issue at trial. The condition and use of the 16-SP will be an important factor with respect to this issue. If the blades on the cutting wheel are kept sharp and properly aligned, the machine operates very smoothly and easily grinds the stump. If not, the machine will not work as smoothly or effortlessly, and would "jump around a little" like Kirchhofer described. This is comparable to a dull knife, which requires extra strength or added pressure to cut what it would cut easily if it was sharp. Without having the opportunity to inspect and preserve the 16-SP, like plaintiff had, defendants were unable investigate the nature and extent of the lack of maintenance by measuring the dullness of the blades and determining their position. Instead, defendants are left with poor laser

copies of limited photographs of the 16-SP. Plaintiff was clearly in a more superior position to document such evidence as his investigator was the only person to have inspected the 16-SP after the incident. *Compare Schmid*, at 80, fn 3 ("The record, however, contains nothing suggesting that Electric Tool's opportunity to detect a lack of maintenance, malfunction, or misuse was materially less than that of Schmid.")

Although not supported by the record in this case, plaintiff may attempt to argue that instability of the 16-SP caused his injury. An inspection of the 16-SP by the defense would have led to evidence that would prove to the jury that such condition was not a factor in the incident. *Id*. ("We do not suggest, of course, that a defendant in the position of Electric Tool has no legitimate interest in inspecting an injury causing product in a condition as close as possible to its condition at the time of the accident.") In addition, even after the passage of time, there is the possibility that certain marks may have been left on the machine after plaintiff contacted the cutting wheel. This information would have been an integral part of the defense. With no opportunity to inspect the 16-SP, defendants' ability to develop the evidence was lost.

As to the third factor, the availability of a lesser sanction, the selection of an appropriate sanction requires consideration of two separate goals: one punitive and one deterrent. Not only must the guilty party be punished, but others in similar circumstances must be deterred from similar conduct. *In re Wechsler*, 121 F. Supp. 2d 404 (D. Del. 2000), citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). The sanction suggested by defendants here achieves both. The lesser sanction typically imposed on the guilty party, a spoliation inference jury instruction, is insufficient in and of itself since it achieves neither.

There is one basic difficulty with the spoliation inference. Like all evidentiary inferences, it is permissive, not mandatory. The jury may draw the appropriate conclusion, that

7

examination of the 16-SP would have yielded evidence harmful to plaintiff's case, but they may also ignore the matter entirely. For that reason, the availability of the inference may not even be a punishment at all, and as a result, it carries no deterrent effect. It is certainly justified and warranted here, but the question is: Is it sufficient? The answer is no.

Plaintiff will no doubt claim to have been unaware of the implications of his inaction, or was not in a position to preserve the product, making him guilty of a breach of duty somewhat less egregious than an act in bad faith. That position is weakened by the fact that counsel had already been retained by plaintiff shortly after the incident. Though aware of the responsibility to preserve evidence, counsel undertook no efforts to preserve the 16-SP. But even assuming the inaction was not bad faith, such a categorization of their conduct does not end the inquiry.

The problem also requires consideration of the deterrent effect on a party willing to engage in an act of bad faith, a party bent on obtaining an unfair advantage in litigation. Faced with evidence decidedly unfavorable to the party's cause, and armed with knowledge that the courts are loath to do more than impose the negative inference sanction, that party will have a choice. If the evidence is destroyed, the jury may, or may not, recognize its significance. One is a definite disadvantage, the other only a possible disadvantage. The choice will be easy; the deterrent effect of the evidentiary inference will be non-existent and the evidence will be spoliated.

The Court should seek a sanction that delivers equipoise to the defendants. This is not a case where plaintiff needed information developed long after the incident to know he had a potential claim. Smith was injured on September 8, 2001. At some point between the incident and February 7, 2002, plaintiff retained counsel and had an investigator inspect the 16-SP. Injury, retention of counsel, inspection and product identification occurred within a mere five

month span. Plaintiff and his counsel knew the validity of the claim depended on what happened during the incident, and knew the claim would revolve around the 16-SP. They knew careful examination of the product would be important to determine what happened in the incident, as evidenced by the retention of the investigator to inspect and photograph the machine.

The only question here is what sanction is appropriate. The sanction that should be imposed must ensure that plaintiff does not benefit from the destruction of evidence that it was his duty to preserve. Plaintiff should not be permitted to contest defendants' expert testimony on the basis of what the 16-SP might show, if only it still existed. Accordingly, he should not be permitted to introduce any countervailing opinion, testimony or evidence to contest defendants' expert's opinions that at the time of incident the machine no longer conformed to the manufacturer's specifications because improper maintenance had left the teeth on the cutting wheel unsharpened and improperly adjusted. In addition, defendants are entitled to an adverse inference jury instruction that plaintiff spoliated the 16-SP and, that had it been preserved, it would have revealed evidence that favored the defendants. These sanctions together strike the proper balance between punitive and deterrent goals, while bringing equipoise to the defendants.

**II.    Conclusion**

Having allowed the 16-SP to be destroyed, plaintiff cannot be permitted to benefit from its absence. Plaintiff should not be able to dispute defense expert's conclusions on the basis of his failure to inspect the 16-SP. Quite simply, one cannot inspect what no longer exists.

Plaintiff may argue that this sanction is too harsh, because in their view the 16-SP was not important evidence. If he is correct, and the 16-SP is not important evidence, then this sanction will prove to be not too harsh. If he is incorrect, and the 16-SP is important evidence, then plaintiff allowed important evidence to be destroyed, and the sanction will prove to be entirely appropriate. In either event, this is a sanction that is adjusted to the importance of the

evidence lost. Defendants, therefore, respectfully request that their motion be granted, and an Order entered in the form attached hereto .

          Respectfully submitted,

          LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO

          BY: _____ (GC1270)
          Gerard Cedrone, Esquire
          Leland I. Kellner, Esquire
          Howard W. Donahue, Jr., Esquire
          Attorneys for Defendant, Promark Products West, Inc.
          and Ariens Company
          Suite 500
          190 North Independence Mall West
          6th & Race Streets
          Philadelphia, PA  19106
          (215) 627-0303

DATED: October 22, 2004

828451v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KYLE SMITH,** | : | |
| *Plaintiff,* | : | |
| v. | : | |
| **PROMARK PRODUCTS WEST, INC.** | : | CIVIL ACTION |
| and | : | NO. 02-CV-2718 (RLB) |
| **ARIENS COMPANY,** | : | |
| *Defendant.* | : | |

## CERTIFICATION OF COUNSEL

Counsel for defendant, Ariens Company, certifies that after reasonable effort the parties are unable to resolve this discovery dispute.

LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO

BY: _____ (GC1270)
GERARD CEDRONE, Esquire
LELAND I. KELLNER, Esquire
HOWARD W. DONAHUE, JR., Esquire
Attorneys for Defendant, Ariens Company
Suite 500
190 North Independence Mall West
6th & Race Streets
Philadelphia, PA  19106
(215) 627-0303

DATED: October 22, 2004

## CERTIFICATION OF SERVICE

  I, Gerard Cedrone, Esquire, hereby certify that a true and correct copy of the within Motion *In Limine* to Preclude Countervailing Opinion, Testimony or Evidence as to Proper Maintenance and an Adverse Inference Jury Instruction for Plaintiff's Spoliation of Evidence by first-class U.S. mail, postage pre-paid, on the _____ day of _____, 2004:

S. Richard Klinges, Esq.
Begley, Carlin & Mandio, LLP.
680 Middletown Blvd.
Langhorne, PA 19047
Attorney for Plaintiff, Kyle Smith

                      _____(GC1270)
                      Gerard Cedrone, Esquire
                      Attorney for Defendant, Ariens Company