**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | |
|---|---|
| KYLE SMITH, | : |
| | : |
| *Plaintiff,* | : |
| | : |
| v. | : |
| | : |
| PROMARK PRODUCTS WEST, INC. | : |
| | : |
| and | : |
| | : |
| ARIENS COMPANY, | : |
| | : |
| *Defendants.* | : |
| | : |

**CIVIL ACTION**

**NO. 02-CV-2718 (RLB)**

**REPLY BRIEF OF DEFENDANTS, PROMARK PRODUCTS WEST, INC. AND**
**ARIENS COMPANY, IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

In an attempt to create an issue of fact, plaintiffs have attached to their opposition brief an affidavit taken by Karl Kirchofer. The affidavit is intended to save two of plaintiffs' claims, establishing (1) that there might have been a causal connection between his injury and the stump grinder's design; and (2) that Kirchofer might have heeded operating instructions had he only known they existed. It is ineffectual as to both.

**I.      The Court May Disregard Kirchhofer's Affidavit to The Extent That it Contradicts his Sworn Deposition Testimony.**

Plaintiff's designated expert, Richard Colberg, opines that the stump grinder should have been equipped with a hypothetical automatic shut-off device of some kind. The underlying concept of such devices is operator protection. With the operator away from the stump grinder's controls, the cutting wheel stops, so an out-of-position operator is in no danger.

Colberg changes the concept entirely, treating the danger as a function of the operator's reaction time. Given an emergency situation, release of an "operator presence control" would

supposedly have brought the cutting wheel to a stop within three seconds.  See Report of Richard A. Colberg at page 6, attached to Defendants' Motion for Summary Judgment as Exhibit "E". Mr. Kirchhofer has now come forward with the claim that his reaction to plaintiff's involvement with the cutting wheel "took in excess of five seconds" and that "[t]he process of flipping the machine away from Mr. Smith took additional time."  See Kirchhofer Affidavit, at paragraphs 5 and 6, attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment as Exhibit "E."  Colberg speculates that the time saved through one or more of the design changes he advocates "could have lessened the extent of Mr. Smith's injury."  See Report of Richard A. Colberg, at page 6, attached to Defendants' Motion for Summary Judgment as Exhibit "E."

What "could have" happened is not exactly the stuff of admissible expert opinion,[1] but the Court need not now consider that potential problem because Kirchhofer's affidavit contradicts his deposition and testimony.  When questioned about his recollection of the event, Kirchofer said nothing about any five second delay.  He described the accident as one that "happened so fast."  See Deposition of Karl Kirchhofer, taken on June 15, 2004, at page 34, a true and correct copy of which is attached hereto as Exhibit "A."  Flipping the machine over was what happened next.  Id. at 50.  Asked whether that had occurred immediately, his response was yes.  Id. at 52.

That testimony is supported by plaintiff's own.  He characterized the accident as happening "in a flash."  See Deposition of Kyle Smith Deposition, taken on June 4, 2002 at page

---

[1]  Defendants have also filed a Motion to Preclude Plaintiff's Expert Richard A. Colberg, which is currently pending before the Court.  When read together, defendants' Motion for Summary Judgment and the Daubert motion warrant the dismissal of plaintiff's case.  Without his expert, plaintiff has failed to prove his prima facie case against defendants.  Pursuant to Judge Buckwalter's Procedures, any response to motions in limine are to be filed five days before trial.  Since this case entered the trial pool on November 1, 2004 without any response from plaintiff to the Daubert motion, defendants respectfully request that the Daubert motion be granted as uncontested pursuant to L.R. Civ. Pro. 7.1(c).

94, a true and correct copy of which is attached hereto as Exhibit "B".  Smith also had this to say:

> Q:       All right.  What happened as your leg was pulled in?  What was going on?  What happened?
>
> A:       **It just took a second**.  Like I said, I don't know.

Id. at page 94, lines 15-19.  (emphasis added).

These statements carry with them more than just an element of truth.  Had a cutting wheel been grinding away at his leg while Kirchhofer "had to reposition [his] feet, bend downward at the knees and exert a great amount of force" to move the stump grinder, one suspects plaintiff's testimony would have been a tad more dramatic.  See Kirchhofer Affidavit, at paragraph 6, attached to plaintiff's Opposition at Exhibit "E".

These circumstances are not new, of course.  Courts have previously faced contradictory affidavits, and are not particularly enamored of them:

> When, without a satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists.

Hackman v Valley Fair, 932 F.2d 239, 241 (3rd Cir. 1991).

That is precisely what occurred here.  Kirchhofer's recollection of the event has been completely revised by plaintiff in an attempt to make it mesh with his absurd theories.  Plaintiff has offered no explanation with a change, let alone a satisfactory one.  The Court is then free to, and should, ignore it entirely.  See e.g., Martin v. Merrell Dow Pharm., Inc., 851 F.2d 703, 706 (where the Third Court affirmed the District Court's dismissal of an affidavit concluding that "When, as in the present case, the affiant was carefully questioned on the issue, had access to the relevant information at that time, and provided no satisfactory explanation for the later

3

contradiction, the courts of appeals are in agreement that the subsequent affidavit does not create a genuine issue of material fact").

Lost in plaintiff's attempt to muddy the waters in this case is the fact that the record is completely devoid of any evidence that plaintiff's injury was not caused immediately upon his leg contacting the cutting wheel. There is no evidence that plaintiff was not already injured before Kirchhofer reacted or even knew that he was cutting Smith. In fact, Kirchhofer's testimony is that he did not even realize he was grinding Smith's leg until after he flipped the machine over:

> Q:    Did you see him slip?
>
> A:    No, I didn't.

<u>See</u> Exhibit "A" at page 45, lines 15-16.

> Q:    How did you know that he got caught in the machine; did you see it, or did you hear him, or hear it?
>
> A:    I don't even know. I guess I kind of heard it, saw it. You know, he was underneath it, and I flipped it over. **I wasn't sure yet if he had his leg in it yet, but when I flipped it over, then I saw obviously then his leg was ripped up by it.**

<u>Id</u>. at page 52, line 23 – page 53, line 5. (emphasis added).

By his own testimony, the operator indicates that he was not even sure if Smith was involved with the machine until after he flipped it over. The injury was immediate. None of the automatic shut-off devices proposed by plaintiff's expert would have reduced Smith's injury since the injury was caused well before Kirchhofer realized what had happened.

The plain fact is there is no genuine issue here. Plaintiff cannot prove the causation element of his emergency control design claim and it should be dismissed.

**II.    Kirchhofer's Affidavit Does Not Establish The Necessary Elements of a Failure to Warn Claim.**

The second claim Kirchhofer's affidavit attempts to save involves the instructions defendants provided.  One of the safety instructions advised that the stump grinder should be operated up or down steep hills, not across them.  See Safety Instructions, page 6, a true and correct copy of which is attached hereto as Exhibit "C".  Kirchhofer claims he would have certainly followed that instruction, had he only known that there was an operator's manual in which it could be found.  First, there was a clear warning on the machine imploring users to follow the safety instructions:  "- FAILURE TO FOLLOW SAFETY INSTRUCTIONS COULD RESULT IN MAJOR INJURY OR LOSS OF LIMB-" See Photograph of Operator Controls on 16-SP, a true and correct copy of which is attached hereto as Exhibit "D".  Defendants did what Colberg says they should have done – follow the warnings or you may get hurt.

The credibility of that claim aside, it too differs from Kirchhofer's deposition testimony, because Kirchhofer, and Smith as well, both agreed they were not on a steep hill.  As pointed out in defendant's original brief, instructions serve to alter behavior in the face of existing conditions.  They do not, and cannot, alter an individual's perception of those existing conditions.  So assuming Kirchhofer's new position was credible, it is entirely irrelevant.

The concept on which plaintiff is relying here is also foreign to Pennsylvania law.  He does not, and cannot, cite a single decision suggesting that a product manufacturer may not rely on an operator's manual to supply instructions for proper use.  And the plaintiff's suggestion that manufacturers should provide "an instruction for the user to read and understand the operator's manual before use which would direct the operator to the instructions included in the manual," Plaintiff's Brief at page 21, is absurd.  The next step plaintiff recommends will be a decal instructing the user to read the instruction for the user to read and understand the operator's

manual before use which would direct the operator to the instructions included in the manual and on the machine. The world and all products in it would be wallpapered with warnings, defeating the very purpose of warnings in the first place.

Assuming that Kirchhofer would have perceived a level area as a steep hill, heeded the warning and operated the machine either up or down the slight grade, there is no evidence that plaintiff's injury would have been avoided. Plaintiff testified that he was standing on flat ground and slipped into the cutting wheel. There is no evidence that this injury would not have occurred had the machine been positioned differently. Plaintiff is still close to the cutting wheel, he is still on the mulch and dirt and he still could slip into the cutting wheel. Plaintiff has only interjected a red herring into this case in an attempt to confuse the issues.[2]

The defendants supplied instructions for proper use. Kirchhofer made no effort to determine if they existed, and by his own testimony did not perceive the condition which would have made them applicable. There is no issue of fact here. Plaintiff's failure to warn claim represents nothing more than a failure to understand the law.

### III.    **Philips** **should not be read narrowly.**

Nothing in <u>Philips v. Cricket Lighters</u>, 841 A.2d 1000 (Pa. 2003), suggests its holding should be strictly limited to its facts. Chief Justice Cappy's opinion sweeps broadly over the whole terrain of Pennsylvania product liability law. Plaintiff's argument that the Court's holding

---

[2]    Plaintiff attempts to create another red herring with respect to timing of defendants' Motion. Incredibly, plaintiff omits any discussion of this Court's January 29, 2004 Order, which extended the fact discovery deadline to July 30, 2004 and set a August 30, 2004 plaintiff expert report deadline and a deadline of September 30, 2004 for defendants' expert reports. <u>See</u> January 29, 2004 Order, a true and correct copy of which his attached hereto as Exhibit "E". Defense counsel attempted to flesh out this issue with plaintiffs before the expiration of the fact discovery deadline, but plaintiff's counsel decided he would remain silent on the issue. According to defendants' July 27, 2004 letter, this silence was expressly deemed as plaintiff's consent that any motions for summary judgment would be due after the expiration of the expert discovery deadline. Any attempt to now assert any such objection is disingenuous and unprofessional given the fact that the parties could have agreed on a course of action before the expiration of the fact discovery deadline.

should be read as being "based solely upon a distinction between the age and characteristics of the intended user and the actual user," Plaintiff's Brief at page 12, simply does not match the Court's language.

The question is not one of abnormal use, it is one of intended use, which includes the question of intended user. The stump grinder was intended to be used by a single operator, which plaintiff does not dispute. Anyone other than the operator, whether child or adult, is not an intended user. Consequently strict liability principles do not apply.

That is what the Supreme Court held in <u>Philips</u>. Sitting in diversity, that is what this Court should hold here. In addition to the lack of causation discussed at length in defendants' original Brief, plaintiff's strict liability claim should be dismissed on these grounds as well.

IV.    **The 16-SP is Not Unreasonably Dangerous – <u>Azzarello</u> Analysis.**

The threshold matter in product liability cases is "whether the evidence is sufficient, for purposes of the threshold risk-utility analysis, to conclude as a matter of law that the product was not unreasonably dangerous, not whether the evidence creates a genuine issue of fact for the jury." <u>Short v. WCI Outdoor Products, Inc.,</u> 2000 U.S. Dist. LEXIS 16009, *15 (E.D. Pa. 2000), attached hereto as Exhibit "F," quoting <u>Surace v. Caterpillar, Inc.,</u> 111 F.3d 1039, 1049, fn. 10, (3rd Cir. 1997). The trial court must weigh the risks of a product against its social utility in order to decide as a matter of social adjustment whether the imposition of liability is justified. <u>Nowak v. Faberge USA, Inc.,</u> 32 F.3d 755, 759 (3d Cir. 1994). An examination of the risk-utility factors overwhelming support a finding that the 16-SP is not unreasonably dangerous when used properly.

**A.    First Factor:  The Usefulness and Desirability of the Product – Its Utility to the User and to the Public.**

The 16-SP is an extremely useful product for the removal of stumps and roots.  Unlike a large trailer-mounted stump grinder, the 16-SP can fit into tighter areas.  The 16-SP can quickly and efficiently grind stumps from above the ground to the roots below the ground.  There are many walk-behind stump grinders on the market today and they even can be rented from most home improvement and garden centers.  When compared to such alternatives such as explosives, chainsaws, chemicals or pulling stumps out with motor vehicles, the utility and desirability of the 16-SP becomes all more evident.  In fact, plaintiff does not suggest that stump grinders are not useful or undesirable.

Kirchhofer testified that Mr. Huber owned three Promark Stump and Root Grinders for use in his tree removal business.  See Exhibit "A" at page 14.  This product was so useful that Mr. Huber continued to use three of them in his business 16 years after they were manufactured. It was also the only stump grinder that Kirchhofer had used during his four year employment at Huber's when he ground countless stumps.  Id. at page 9, lines 5-25 and page 15, lines 6-8.

Plaintiff claims that the 16-SP was unreasonably dangerous in that it lacked automatic shut-off devices and should have had a retractable guard over the cutting wheel.  See Report of Richard A. Colberg, at page 7, attached to Defendants' Motion for Summary Judgment as Exhibit "E".  As discussed at length in defendants' original brief and previously in this brief plaintiff, plaintiff has not set forth any defect in the 16-SP that caused or contributed to his injury.  These devices are intended to protect operators, not intervening third parties.  Similarly, plaintiff has not provided a 16-SP equipped with any shut-off device or the retractable guard to show that such designs are feasible and would have been safer in this incident.  This failure will

become more detrimental to plaintiff as this analysis is developed.  The first factor weighs in favor of the defendants.

### B.      Second Factor:  Safety Aspects.

The fact that "some injuries may occur does not mean that a product is defective."  Short at *17, quoting Monahan v. Toro Co., 856 F.Supp. 955, 959 (E.D. Pa. 1994).  There are several safety aspects that were designed into the 16-SP.  For instance, it is nearly impossible for an operator to become involved with the cutting wheel while operating the 16-SP from the intended operator's position.  The cutting wheel is guarded by its location as well as by the frame or body of the machine.  There is a warning to "Keep Hands and Feet Clear of Cutting Wheel" located at the operator controls as well as on the body where it guards the cutting wheel.  See Exhibit "D". Another warning on the operator controls states:  "- FAILURE TO FOLLOW SAFETY INSTRUCTIONS COULD RESULT IN MAJOR INJURY OR LOSS OF LIMB –."  Id.  The chance that serious injury could result from contacting a cutting wheel that rotates at 2,400 rpms is obvious, just like the chance of injury from contacting rotating chainsaw teeth.  However, the 16-SP was designed to protect the operator from such dangers and contained explicit warnings advising of such dangers.  The second factor also weighs in favor of the defendants.

### C.      Third Factor:  Availability of Safer, Substitutable Product.

Plaintiff has proposed alternative design concepts which consist of some combination of automatic shut-off devices and a retractable guard.  In this Reply as well as in defendants' original brief, the effectiveness of the automatic shut-off devices as safer alternative designs have been shown to be absurd.  Although addressed extensively in defendants' Motion to Preclude Plaintiff's Expert Richard A. Colberg, plaintiff has failed to provide a 16-SP containing any of the proposed automatic shut-off devices or the retractable guard.  Colberg has advanced mere

concepts, not an alternative design. Colberg has not tested a 16-SP with any of his concepts and has not advanced an alternative design. See Short at *20 (where the court found that plaintiff failed to present a single alternative design for the lawn mower because they did not test a lawn mower with plaintiff's expert's alternative concept). As plaintiff has not presented a single alternative design for the 16-SP, this factor overwhelmingly weighs in favor of the defendants.

**D.    Fourth Factor:  Elimination of the Unsafe Character of the Product Without Impairing its Usefulness or Making it too Expensive.**

This factor also weighs in favor of the defendants for many of the same reasons listed in the previous section. Plaintiff has not presented a single safer, feasible alternative design, essentially conceding that it is impossible to make this product 100% safe. The 16-SP contains explicit warnings that hands and feet should be kept away from the cutting wheel and that serious injury could result if the instructions are ignored. The problems with the automatic shut-off devices have been discussed and the same criticisms apply here.

With respect to the proposed retractable guard, this design has not been tested on the 16-SP. Whether such a retractable guard is feasible or would eliminate the alleged unsafe character has not been shown by plaintiff. Plaintiff cannot point to any other stump grinder because Colberg's guard has never been used on a stump grinder.

One thing is clear – the cutting wheel must be exposed to the wood in order to cut it. Plaintiff has argued that too much of the cutting wheel was exposed. When compared to the cutting wheel of competitor's machines, it is apparent that all have approximately the same amount of wheel exposed. See Photographs of Dasko, Vermeer and Praxis stump grinders, attached hereto as Exhibit "G." This is necessary so that the machines can cut a wide range of stump diameters. Plaintiff, through his expert Colberg, has failed to present any evidence that a retractable guard is feasible, would not impair the 16-SP's ability to perform its intended

function and would be safer. It goes without saying that there are myriad of risks imposed by such a guard, from hanging up on the stump or the ground, which would impede the safe operation of the machine to the guard itself striking the wheel during operator and causing the machine to lose control. This factor, then, weighs in favor of defendants.

### E.    Fifth Factor: The User's Ability to Avoid Danger by Exercising Care in the Use of the Product.

The 16-SP was designed so that a properly positioned operator could not contact the cutting wheel. The potential risks were identified and warned against on the machine itself. The product has clear warnings about keeping hands and feet away from the rotating cutting wheel and what will happen if one does not. Plaintiff and Kirchhofer both read the warnings on the machine and yet still placed Smith in harm's way. See Exhibit "A" at page 73, lines 16-page 74, line 1 and Exhibit "B" at page 38-39. Kirchhofer believed it was "commonsense" that the operator would stand behind the controls when using the machine and yet, he still invited plaintiff to hold onto the bars that connected the handlebars to the frame, placing plaintiff's feet close to the cutting wheel. See Exhibit "A" at page 17, lines 18-23. If this machine was used properly, Smith would not have been injured. Instead, it was used in complete disregard of the warnings and, according to Kirchhofer, commonsense.

### F.    Sixth Factor: The User's Anticipated Awareness of the Dangers and Their Avoidability.

People are obviously aware of the dangers associated with a cutting wheel that rotates at 2,400 rpms, just like people are aware that they should avoid rotating chainsaw teeth, propellers and lawn mower blades. The dangers are avoided if the instructions and warnings on the machine are followed. If they are not, than injury may result. Plaintiff said:

> A:    I guess something unsafe would be sticking your arm or leg into it, like on purpose. That would be unsafe.

<u>See</u>  Exhibit "B" at page 86, lines 5-7.

Plaintiff certainly appreciated that the cutting wheel could injure a body part in its path. Despite appreciating the dangers associated with the stump grinder and having read the warnings, plaintiff still proceeded to place himself in harm's way.  This factor weighs mitigates against a finding that the 16-SP was unreasonably dangerous as well.

### G.    Seventh Factor:  Feasibility of Spreading the Loss.

The concept behind Pennsylvania product liability law is not that the consuming public as a whole should bear the cost for injuries whenever a person is hurt using a product.  The manufacturer is not an insurer.  Rather, spreading the loss among all users is only appropriate when there is something wrong with the product.  If it cannot be found to be unreasonably dangerous, there is no basis for spreading the risk of loss.  "A manufacturer should not have to spread among its customers the economic loss resulting from injuries from a product that is not defective, and for which the risk of harm can be eliminated by operating the product properly and heeding given warnings."  <u>Short</u> at *23, quoting <u>Monahan</u>, at 964.  Since the other six factors mitigate against a finding that the 16-SP was unreasonably dangerous, this last factor does not need to be examined.

There is no reason to make defendants' liable for plaintiff's injury.  The design choices and trade-offs made by defendants were reasonably – with the utility clearly outweighing the risk.  This is just the sort of case for which the <u>Azzarello</u> analysis was designed.  As the Pennsylvania Superior Court pointed out, allowing a case like this to go to the jury may tempt it to "redesign[] the product in a negative/hindsight fashion and tailor[] the defect to the specific facts of the case." <u>Davis v. Berwind</u>, 640 A.2d 1289, 1299 (Pa. Super. 1994), aff'd, 690 A.2d 186 (Pa. 1997).  "Where a deep pocket manufacturer or seller is the only defendant, a jury

verdict will likely favor the injured plaintiff.  As a result, the limitations on manufacturer liability provided in section 402A are rendered ineffectual and the path is cleared for absolute liability."  Id.  The concept of absolute liability is what Pennsylvania strict liability law was designed to prevent.  The issue for this Court is whether the product could be found unreasonably dangerous when it left the manufacturer's hands.  Plaintiff has not met his burden.

Respectfully submitted,

**LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO**


BY: _____(GC1270)
               Gerard Cedrone, Esquire
               Leland I. Kellner, Esquire
               Howard W. Donahue, Jr., Esquire
               Attorneys for Defendants,
               Promark Products West, Inc. and Ariens Company

DATED:  November 2, 2004

#831021

13

## CERTIFICATION OF SERVICE

I, <u>Howard W. Donahue, Jr., Esquire</u>, hereby certify that a true and correct copy of the within Reply Brief in Support of Defendants, Promark Products West, Inc., and Ariens Company, Motion for Summary Judgment by first-class U.S. mail, postage pre-paid, on the 2nd day of November, 2004:

S. Richard Klinges, Esq.
Begley, Carlin & Mandio, LLP.
680 Middletown Blvd.
Langhorne, PA  19047
***Attorney for Plaintiff, Kyle Smith***

_____(HW2052)
Howard W. Donahue, Jr., Esquire
Attorney for Defendants,
Promark Products West, Inc. and Ariens Company