IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYLE SMITH | : CIVIL ACTION - LAW |
| v. | : No. 02-CV-2718 (RLB) |
| PROMARK PRODUCTS WEST, INC. | : |
| and | : |
| ARIENS COMPANY | : |

### ORDER

AND NOW, this        day of              , 2004, upon consideration of the Motion in Limine by Defendants Promark Product West, Inc. and Ariens Company, Inc. to Preclude Countervailing Opinion, Testimony or Evidence as to Proper Maintenance and an Adverse Inference Jury Instruction for Spoliation of Evidence, and Plaintiff's Response thereto, it hereby ORDERED and DECREED that said Motion is DENIED.

BY THE COURT:

_____
Honorable Ronald L. Buckwalter

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYLE SMITH | : | CIVIL ACTION - LAW |
| | : | |
| v. | : | No. 02-CV-2718 (RLB) |
| | : | |
| PROMARK PRODUCTS WEST, INC. | : | |
| | : | |
| and | : | |
| | : | |
| ARIENS COMPANY | : | |
| | : | |

**PLAINTIFF, KYLE SMITH'S ANSWER TO MOTION IN LIMINE BY DEFENDANTS PROMARK PRODUCT WEST, INC. AND ARIENS COMPANY, INC. TO PRECLUDE COUNTERVAILING OPINION, TESTIMONY OR EVIDENCE AS TO PROPER MAINTENANCE AND AN ADVERSE INFERENCE JURY INSTRUCTION FOR <u>SPOLIATION OF EVIDENCE</u>**

For the reasons set forth in the accompanying Memorandum of Law, Plaintiff, Kyle Smith, respectfully requests that the Court deny the Motion in Limine by Defendants, Promark Product West, Inc. and Ariens Company, Inc. to Preclude Countervailing Opinion, Testimony or Evidence of Proper Maintenance or the Condition of the Subject Equipment and for an Adverse Inference Jury Instruction for Spoliation of Evidence.

BEGLEY, CARLIN & MANDIO, LLP

BY: <u>/s/ S. Richard Klinges, III, Esquire</u>
S. Richard Klinges, III, Esquire
I.D. # 02018
Todd M. Sailer, Esquire
I.D. # 86013
680 Middletown Boulevard
Langhorne, PA 19047
(215) 750-0110
Date: <u>November 5, 2004</u>   Attorneys for Plaintiff

278701.1
Nov 05 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYLE SMITH | CIVIL ACTION - LAW |
| v. | No. 02-CV-2718 (RLB) |
| PROMARK PRODUCTS WEST, INC. | |
| and | |
| ARIENS COMPANY | |

**MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION IN LIMINE BY DEFENDANTS PROMARK PRODUCT WEST, INC. AND ARIENS COMPANY, INC. TO PRECLUDE COUNTERVAILING OPINION, TESTIMONY OR EVIDENCE AS TO PROPER MAINTENANCE AND AN ADVERSE INFERENCE JURY INSTRUCTION FOR SPOLIATION OF EVIDENCE**

I.   **Facts**

This is a strict liability and negligence action brought by Plaintiff, Kyle Smith, brought against Defendants' Promark Products West, Inc. and Ariens Company, Inc. Plaintiff, Kyle Smith, sustained severe injuries to his right leg as a result of his leg coming into contact with a moving cutting wheel of Defendants' product, a Promark Model 16SP stump grinder. The accident happened on September 8, 2001 while Plaintiff was assisting a person by the name of Karl Kirchofer in removing stumps from a dirt/mulch mound on the property of John and Barbara Groner located at 1324 Camelot Drive, Easton, Pennsylvania, 18045.

Mr. Kirchofer was operating the stump grinder to grind stumps while Plaintiff assisted by filling in holes left after the stumps were removed with dirt. Plaintiff had never operated a stump grinder before the date of the accident. As Mr. Kirchofer was grinding one stump, he experienced difficulty in that the stump grinder was "jumping around" on the stump. He therefore requested Plaintiff to assist him in steadying the stump grinder by standing to the left of the stump grinder and

holding on to the left handlebar. At this time, Mr. Kirchofer was operating the stump grinder across the slope rather than up or down on the slope with the left side of the grinder facing up the slope and the right side facing down the slope. Therefore, since Plaintiff was positioned on the left side of the stump grinder he was up the slope from the stump grinder. As Mr. Kirchofer was grinding the stump, Plaintiff's right leg slipped into the moving cutting wheel of the stump grinder. After Mr. Kirchofer became aware that Plaintiff's leg had contacted the cutting wheel, he realized from prior experience with the machine that there was no way that he could quickly shut down the machine and stop the cutting wheel. He then attempted to determine how he could assist Plaintiff. Mr. Kirchofer stated that since he was startled and had never been presented with this type of situation before, this process took in excess of five seconds before he decided that his only option was to try to flip the stump grinder away from Plaintiff. The stump grinder weighs 490 pounds. Mr. Kirchofer stated that due to the weight of the stump grinder, it was difficult to flip the machine and in order to do so he had to reposition his feet, bend down at the knees and exert a great amount of force upon the stump grinder. This process of flipping the machine away from the Plaintiff took additional time. As a result of the accident, Plaintiff sustained severe injury to his right leg including an open proximal tibial fracture with soft tissue loss, bone loss of the right lower extremity, severely comminuted proximal tibia and a large open wound of the right lower extremity.

      Plaintiff alleges that the stump grinder at issue is defective. Approximately 8 1/2 inches of the 14 inch cutting wheel of the stump grinder was exposed and unguarded. Plaintiff therefore claims that the stump grinder was defective due to inadequate guarding of the cutting wheel. Additionally, the stump grinder did not possess any devices to enable the cutting wheel to be quickly stopped. Mr. Colberg opined that the stump grinder should have equipped with a operator presence control, positive clutch and a braking system on the cutting wheel to allow immediate stoppage of the wheel. Plaintiff further alleges that the stump grinder is defective due to inadequate warnings and instructions as no decals were attached to the stump grinder alerting the user to always operate the stump grinder up or down on a slope and to read and understand the owner's manual prior to use.

II.   **Argument**

The considerations in determining whether a spoliation sanction is appropriate are 1) the degree of fault of the party who altered or destroyed the evidence; 2) the degree of prejudices suffered by the opposing party and 3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3d Cir. 1994); Schroeder v. Cmwlth. Dept. of Transportation, 551 Pa. 243, 250, 710 A.2d 23, 27 (1998); Williams v. American Surplus Inc., 2003 WL 22232882 (E.D. Pa.). Defendants Motion in Limine regarding spoliation of evidence should be denied.

First, Plaintiff is not at fault for the fact that the subject stump grinder is not available. In Williams, it was found that the plaintiff therein was found to not be at fault for spoliation of evidence of a grate in a catwalk where the plaintiff fell and was injured where the grate was replaced after the accident by the plaintiff's employer since the grate was under the control of the employer and not under the control of the plaintiff. Williams, supra. Further, in the court Smitley v. Holiday Rambler Corp., 707 A.2d 520 (Pa. Super. 1998) found that the spoliation doctrine was incorrectly applied where there was evidence that the plaintiff's counsel had instructed the owner of a salvage yard to maintain the remains of a vehicle indefinitely because they would be required for litigation and the salvage yard owner thereafter disposed of the remains without permission. See also Dansak v. Cameron Coca Cola Bottling Co., 703 A.2d 489 (Pa. Super. 1997) (holding that the spoliation of evidence doctrine should not be applied where the plaintiff is not at fault for the unavailability of the product and can identify the product supplier where the plaintiff was injured by a broken soda bottle while unloading the bottles from a box of soda delivered by the soda manufacturer). Plaintiff did not own or possess the subject stump grinder at any point in time. Rather, the machine had been owned by Joseph Huber and Action Tree Service. On February 7, 2002, Plaintiff's investigator traveled to Mr. Huber's place of business in Catasaqua, Pennsylvania with an attorney from Plaintiff's counsels' office, Randall L. Miller, Esquire and took photographs of the machine. (Affidavit of Charles Sulzbach, Exhibit "A"). While photographing the machine, Plaintiff's investigator suggested to Mr. Miller that he purchase the machine from Mr. Huber. Mr. Huber heard Plaintiff's investigator's

suggestion and stated that he would not sell the machine. Mr. Huber was advised that the machine may be needed in connection with litigation that could arise from the accident involved herein and he was requested to preserve the stump grinder. (Affidavit of Charles Sulzbach, Exhibit "A"). Mr. Huber advised that he would retain possession of the machine and that it would be preserved. (Exhibit "A"). Plaintiff filed a complaint in this matter on May 7, 2002 against Promark Products West, Inc. However, Plaintiff could not locate Promark Products West, Inc. since it was out of business. Through further investigation, Plaintiff's counsel learned in or around February, 2003 that Ariens Company, Inc. had purchased Promark Products West, Inc.. Plaintiff thereafter filed an Amended Complaint naming both Promark Products West, Inc. and Ariens Company, Inc. on February 11, 2003. This complaint was served upon Ariens on February 27, 2003. Defendants filed an answer to Plaintiff's Complaint on April 21, 2003. Plaintiff served Defendant with an initial disclosure statement on June 19, 2003 identifying Joseph Huber as a person who was likely to have information and providing Mr. Huber's address. Plaintiff's counsel also stated that it was believed that Huber leased or lent the subject stump grinder to Karl Kirchhoffer who was operating the stump grinder at the time of the accident.

After Plaintiff's counsel realized that there was a defendant, Plaintiff's counsel made attempts to obtain the subject stump grinder for inspection by both parties. Plaintiff's counsel sent a letter to Joseph Huber dated July 8, 2003 with a subpoena requested that Mr. Huber permit the stump grinder to be transported to Bristol, Pennsylvania so that inspections could be completed. Plaintiff's counsel advised Joseph Huber that the stump grinder would be returned to him as expediently as possible. (See letter dated July 8, 2003 and subpoena, Exhibit "B"). On July 15, 2003, an investigator traveled to Mr. Huber's place of business again. Finding that no one was present at Mr. Huber's property, Plaintiff's investigator was led to the residence of one of Mr. Huber's friends by a sign on the door at the property directing that deliveries be made to a different address. This person informed Plaintiff's investigator that Joseph Huber had just recently passed away on July 12, 2003. Plaintiff's investigator traveled to Catasaqua on August 15, 2003, August 31, 2003 and September 10, 2003 to attempt to locate the stump grinder with no success. (Exhibit "A"). Plaintiff's investigator contacted other landscaping and tree maintenance companies in the Catasaqua area to see if they had purchased the stump grinder. On November 7, 2003 the investigator spoke to a tree maintenance company in

the area and learned that David Huber had been to their location after the death of his brother trying to sell some larger equipment from his brother's business which did not include the stump grinder. (Exhibit "A"). Contact was made with David Huber and requests were made for Mr. Huber to produce the stump grinder. Mr. Huber informed Plaintiff's investigator that he would only look into locating the stump grinder if he received a letter assuring that there would be no liability for the accident or any further involvement into "his dead brother's past." (Affidavit of Charles Sulzbach, Exhibit "A"). Plaintiff's counsel sent a letter to Mr. Huber dated November 11, 2003 stating that Plaintiff did not intend to file a lawsuit against Mr. Huber's late brother and in fact could not do so as the statute of limitations had expired. Plaintiff's counsel requested Mr. Huber to contact him to discuss the location of the stump grinder and to possibly purchase the stump grinder from Mr. Huber. (Plaintiff's counsel's letter dated 11/11/03, Exhibit "C").[1] Mr. Huber never responded to Plaintiff's letter. Plaintiff also served Mr. Huber with a subpoena to obtain the stump grinder for inspection. (See subpoena, Exhibit "D"). The stump grinder was never produced. Plaintiff's counsel learned thereafter that Joseph Huber had destroyed the subject stump within a month grinder after Plaintiff's investigator's initial visit to his location on February 7, 2002 out of fear that he would be held liable for Plaintiff's injuries. (Affidavit of Kyle Smith, Exhibit "E"). Contrary to Defendants' argument, Kyle Smith did not state at his deposition that the stump grinder was sold after Joseph Huber passed away. It is clear that Plaintiff was referring to Joseph Huber's business, not the stump grinder. (Plaintiff's deposition, Exhibit "F" at 21-22). Consequently, Defendants' allegations of misconduct on the part of Plaintiff without any evidence of the same are baseless and inflammatory and should be rejected. Plaintiff is not at fault for the unavailability of the stump grinder.

Defendants failed to show that they are prejudiced by the unavailability of the machine. It has been held that where a plaintiff alleges a design defect which is common to all models of the

---

[1] Plaintiff's counsel inadvertently did not produce this letter to Defendants' counsel pursuant to one of Defendants' counsel's interrogatories. This was not a willful attempt to conceal this letter Plaintiff certainly had nothing to gain by withholding it. Plaintiff's counsel, Todd Sailer, Esquire drafted the answers to Defendant's interrogatories and when doing so did not realize that Plaintiff's counsel, S. Richard Klinges, III, Esquire had sent this letter to Mr. Huber and did not see the letter in Plaintiff's file. However, the letter was located by Plaintiff's counsel while reviewing the case to respond to the instant motion in limine.

particular product at issue, rather than a malfunction of the product specific to the item being used at the time of the accident, a defendant is not prejudiced by the unavailability of the product since the defendant is able to inspect a different product of the same model. Schmid, supra at 79-80; Quaile v. Carol Cable Co, Inc., 1993 WL 53563 (E.D. Pa.1993); O'Donnell v. Big Yank, Inc., 696 A.2d 846, 848-49 (Pa. Super. 1997); Medina v. Rose Art Industries, Inc., 2003 WL 1877563 (E.D. Pa.); Harley v. Mikita USA, Inc., 1998 WL 156973 (E.D. Pa. 1998). The Schmid court found that since the plaintiff was proceeding with a design defect claim "immediate access to the particular saw involved in the accident was greatly diminished" and that the Defendant could respond to the plaintiff's claims "as well or better by inspecting and testing multiple saws of the same design then by inspecting the particular saw involved in the accident." Schmid, supra. The Harley court stated that "to the extent that the plaintiff's claim is based on a design defect, where any of the defendant's saws can be used to prove or disprove the defect, the spoliation doctrine is inapplicable." Harley, supra.

Plaintiff's cause of action alleges that Defendant's stump grinder had a defective design common to all Promark Model 16SP stump grinders and do not allege a malfunction of the specific stump grinder being used at the time of the accident. (See Plaintiff's Amended Complaint, Exhibit "G"; Plaintiff's expert report of Richard A. Colberg, Exhibit "H"). Therefore, Defendants are not prejudiced by the fact that the specific stump grinder being used at the time of the accident is unavailable. With regard to the defects alleged by Plaintiff which include the lack of proper guarding around the cutting wheel, the lack of automatic shut off devices to allow for rapid stoppage of the grinding wheel in the event of an emergency and the failure of the stump grinder to have sufficient warning and instructions included on the stump grinder, an inspection of any Promark Model 16SP Stump grinder would allow for defendants to respond to Plaintiff's claims. Indeed, Defendant's expert, John E. Meyers was able to draft a report in connection with this action in exactly this fashion by inspecting a different Promark Model 16 SP stump grinder. Defendants attempt to manufacture an argument that they are prejudiced because Plaintiff's investigator was able to view the stump grinder while their expert was unable to do the same. However, Plaintiff's investigator is not an engineer and did not perform an inspection of the machine from an engineering point of view. Plaintiff does not enjoy any unfair advantage due to the unavailability of the stump grinder since the

stump grinder was not available for Plaintiff's expert, Richard A. Colberg to inspect in connection with his review of this matter. (Colberg report, Exhibit "H" at 2).

Moreover, numerous photographs exist of the stump grinder and the cutting wheel of the stump grinder that were taken by Plaintiff's investigator which have been available for review by Defendants' expert. Defendants complain that it is difficult to ascertain from the photographs what condition the teeth of the cutting wheel were in, how sharp they are and how they were aligned. This is debatable and at any rate, this has little bearing on the issues central to this case. The sharpness and alignment of the teeth on the cutting wheel are of little importance. While the sharpness of the teeth may be one factor that could cause the machine to be difficult to control while grinding a stump, such difficulty is also caused by other factors including the denseness or hardness of the wood and the design of the cutting wheel itself with a cutter at every 60 degrees of rotation. (Colberg report, Exhibit "H" at 2,3; Kirchhoffer deposition, Exhibit "I" at 39-41). Mr. Kirchhoffer testified that the stump grinder would only occasionally "jump around" on stumps and that he believed that this phenomenon was due only to the denseness or hardness of the wood. (Kirchhoffer deposition, Exhibit "I" at 39-41). Therefore, even if the machine had been inspected by Defendants' expert, Defendants would not be able to establish that the stump grinder was difficult to control due solely to dullness of the cutting blades or improper maintenance. Also, Plaintiff's investigator did not photograph the stump grinder until February 7, 2002, which was six months after the accident occurred on September 8, 2001. Therefore, even at the earliest point at which it could be alleged that the machine could have been secured, which was before Plaintiff knew if a Defendant existed or a lawsuit would ensue,[2] it would be impossible for Defendant to establish that the stump grinder was in the same condition on the date of the accident as it appeared at that time.   In Schmid the defendant raised similar arguments as those raised by Defendants herein that an alteration of a saw at issue therein by plaintiff's expert denied defendant the opportunity to determine whether the saw had been properly maintained. The Schmid court noted that there was nothing to suggest that the defendant's opportunity to detect a lack

---

[2]The Schmid court indicated that any fault is lessened where a plaintiff conducts an investigation when no suit has been filed and the plaintiff does not know whether he or she has a basis for instituting suit as many accident investigations do not lead to litigation and many narrow the filed of potential defendants. Schmid, supra at 81.

278701.1
Nov 05 2004

7

of maintenance, malfunction or misuse was materially less than that of the plaintiff. The same situation is presented in this matter. It is not plaintiff's fault that Mr. Huber destroyed the stump grinder at issue after plaintiff's investigator photographed the machine. Plaintiff was in no way involved in the disappearance of the machine. Both parties have been deprived of the opportunity to inspect the machine due to the acts of Mr. Huber.

      Even if the court were to find that a sanction is warranted, courts are to select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim. Schmid, supra; Tripp v. Ford Motor Company, 1996 WL 377122 (E.D. Pa.). Further, the policies sought by the spoliation doctrine are to prevent fraudulent claims and to remove the Plaintiff from the position of deciding whether the availability of the allegedly defective product would help or hurt their case. Harley, supra at 13. As the court found in Harley, the court herein should find that such policies would not be advanced by granting the Defendants' request for sanctions. Plaintiff did not willfully destroy or cause the unavailability of the stump grinder in this case. Plaintiff did not even own or possess the machine at any point in time and never had control over it. Additionally, Plaintiff's counsel secured assurances from the owner of the stump grinder, Joseph Huber, that he would retain the machine in his possession and that it would be preserved at a time when Plaintiff was only conducting a preliminary investigation of the machine before Plaintiff knew whether suit would be filed or whether a defendant even existed. Through no fault or involvement by the Plaintiff, Mr. Huber destroyed the machine shortly after Plaintiff's investigator photographed it. Certainly Plaintiff would have no reason to make the stump grinder unavailable as it disappeared before Plaintiff's expert could inspect it. Plaintiff would not have foreseen the limited role that the sharpness of the cutting teeth would play in this case until long after the machine was disposed of after depositions and discovery had taken place. As stated above, any prejudice is extremely low if it exists at all since Plaintiff has asserted design defect claims and not claims that the specific stump grinder at issue malfunctioned. Even if Defendant had had an opportunity to inspect the machine and found that the cutting teeth were dull, this would not establish that the difficulty that Kirchhofer experienced in controlling the machine when grinding a stump was due solely to any such dullness as this phenomenon would likely be caused not only by dullness of cutting teeth but also the hardness or denseness of the stump wood and the design of the cutting wheel with a cutting blade at every 60

degrees of rotation. (Colberg report, Exhibit "H" at 2,3; Kirchhoffer deposition, Exhibit "I" at 39-41). Defendants also would be unable to establish that the stump grinder was in the same condition at the time of the accident as any condition of the machine observed at an inspection.

In light of the above, sanctions against Plaintiff for spoliation of the stump grinder are unwarranted. Even if the court were to find that a sanction is appropriate, any such sanction should be a slight one to avoid substantial unfairness to the Plaintiff. Therefore, Defendants' request that Plaintiff not be permitted to rebut evidence of spoliation or evidence to contest Defendants' expert's opinion that at the time of the incident the machine no longer conformed to the manufacturer's specification due to improper maintenance should be denied. While Plaintiff does not believe that a spoliation sanction is called for in this case, at most, it should be left to a jury question whether Plaintiff was responsible for the spoliation of the evidence and whether the unavailable evidence would not have been favorable to Plaintiff. Tripp, supra at 3. Plaintiff should be permitted to introduce evidence that it was not responsible for the unavailability of the stump grinder. Plaintiff should also be permitted to enter evidence that even if the cutters were dull, this alone would not cause difficulty in controlling the machine on stumps. Finally, Plaintiff should be allowed to introduce evidence or argument that even if Defendants were able to inspect the machine, Defendants would still be unable to establish what the condition of the stump grinder was at the time of the accident.

## II.   Conclusion

Based on the foregoing, Plaintiff respectfully requests that Defendants' Motion in Limine be denied.

BEGLEY, CARLIN & MANDIO, LLP

BY: /s/ S. Richard Klinges, III, Esquire
S. Richard Klinges, III, Esquire
I.D. # 02018
Todd M. Sailer, Esquire
I.D. # 86013
680 Middletown Boulevard
Langhorne, PA 19047
(215) 750-0110

Date: November 5, 2004                    Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYLE SMITH | CIVIL ACTION - LAW |
| v. | No. 02-CV-2718 (RLB) |
| PROMARK PRODUCTS WEST, INC. | |
| and | |
| ARIENS COMPANY | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Plaintiff, Kyle Smith's Answer to Motion in Limine by Defendants Promark Product West, Inc. and Ariens Company, Inc. to Preclude Countervailing Opinion, Testimony or Evidence as to Proper Maintenance and an Adverse Inference Jury Instruction for Spoliation of Evidence was forwarded to Defendants' counsel listed below by regular mail.

Leland Kellner, Esquire
LAVIN, COLEMAN, O'NEILL, RICCI
Penn Mutual Tower, Suite 1000
510 Walnut Street
Philadelphia, PA 19106


Date: November 5, 2004

/s/ S. Richard Klinges, III, Esquire
S. Richard Klinges, III, Esquire
Todd M. Sailer, Esquire

278701.1
Nov 05 2004